### HART *v.* PENNSYLVANIA R. Co.

*(Circuit Court, E. D. Missouri.   April 6, 1881.)*

1. COMMON CARRIER—BILL OF LADING—LIMITING LIABILITY.

> A common carrier may, by having a shipper sign a bill of lading fixing the value of property shipped at the amount it is willing to be liable for, limit its liability to that amount in case of loss in consequence of its gross negligence.

2. SAME.

> Where five horses, some saddles, etc., were shipped by rail, and the bill of lading was signed by both the carrier and shipper, and provided, among other things, "that the carrier assumes a liability on the stock to the extent of the following agreed valuation : *If horses,* * * *   not exceeding two hundred dollars each ;* * * *   if a chartered car, on the stock or contents in same, not exceeding twelve hundred dollars for the car load ;"* and through the carrier's gross negligence one of the horses, alleged to have been worth $15,000 was killed, the others injured, and the saddles, etc., lost : *Held,* in a suit by the shipper for damages, that his recovery could not exceed the amount fixed in the bill of lading.

Plaintiff shipped five valuable race-horses, some saddles, etc., on a car of defendant, for transportation from Jersey City, New Jersey, to St. Louis, Missouri. The bill of lading received by him contained the following printed condition, viz.: "That

the carrier assumes a liability on the stock to the extent of the following agreed valuation: *If horses,* \* \* \* *not exceeding $200 each;* \* \* \* *if a chartered car, on the stock and contents in same, not exceeding $1,200 for the car load.*" The bill of lading was signed by both plaintiff and defendant. The horses were not shipped in a chartered car. Through defendant's gross negligence, one of the horses, alleged to have been of the value of $15,000, was killed, the others injured, and the saddles, etc., lost, while being transported to their destination. This suit was brought to recover $25,000 damages from defendant, alleged to have been suffered by plaintiff in the manner above stated. The question in this suit is as to whether or not the plaintiff's recovery should be limited by said condition in the bill of lading and the agreement therein as to the value of the horses. The case was tried before a jury.

Defendant objected, upon the trial, to the introduction of any testimony tending to show that the horses were worth more than $200 each.

*Geo. M. Stewart,* for plaintiff.

*Pattison & Crane,* for defendant.

McCRARY, C. J., in ruling upon the objection, said: "The question raised as to the construction of this bill of lading we have considered as well as we could, in the very brief time we had for the purpose. It is a question of considerable importance, and it is to be regretted that we have not had more opportunity for its examination. The doctrine, of course, is well settled, in the federal courts at least, that a common carrier cannot relieve himself from the consequences of his own fraud by any stipulation inserted in the bill of lading; and I think I may go further, and say that it is very well settled that this cannot be done even by a contract signed by both parties. I think it is agreed, even if the shipper and the railroad company enter into an agreement that the company shall not be liable for its own negligence, in so many words, that it would be a void agreement. No court would enforce it. It would be contrary to public policy, and it would not be upheld. But the courts certainly

have not gone beyond that; and the cases to which the court have been referred, so far as we have been able to examine them, are cases of bills of lading or receipts by which the companies undertake to relieve themselves entirely from responsibility on account of negligence. This is a different case. It is a case in which the shipper has entered into an agreement in writing by which he has said his property is of a certain value, and that if it is more he will not be entitled to recover more than the value named. It is not, like most of the cases, inserted by a company in a receipt, but it is stipulated in the contract, signed by the shipper as well as by the agent of the company; and the only question here is whether a man who delivers live stock to a railroad company, to be transported upon cars, has a right to stipulate with the company concerning the value of that property.

"There is another principle that enters into the subject, and that is this: that in cases where common carriers may limit their liability at all by contract, stipulation, or notice, there is this qualification,—that the limitations shall be reasonable and just in the eye of the law. Now, it seems to me—and in this Judge Treat agrees with me—that there is a good deal of justice in a stipulation of this kind. I do not see in it anything contrary to equity or fair dealing. We all know that ordinary men are not competent to judge of the value of blooded horses. Here, for instance, is a case which illustrates exactly what I think is the purpose of such a stipulation: A man comes along to a railroad company and says, 'Here is a horse I wish to ship from Jersey City to St. Louis.' He says nothing more. The animal, to all appearances, may be an ordinary animal, so far as an ordinary man would be able to judge. The party who ships him signs an agreement, which has printed in it, in large letters, a stipulation that, in case the horse is lost, he shall not be entitled to recover over $200, which is about the value of an ordinary horse. He is shipped and lost; then the shipper claims he is worth $15,000. Ought he not to be bound to make known,—to give notice,—in such a case, of the value of the animal? Very likely the care that the transportation

company would take of the animal would be very much greater had they had notice of its value, and they would probably demand and receive a larger price for its transportation. I do not see, therefore, myself that there is anything unreasonable, and so contrary to natural justice and equity, in a stipulation of this kind, as to make it absolutely void, when it is signed by the shipper as well as by the company. I therefore hold that the recovery must be limited by the amounts fixed in the contract."

McCRARY, C. J., subsequently charged the jury as follows:

"*Gentlemen of the Jury:* The amount of the recovery of the plaintiff here must be determined by the construction of the contract under which the horses were shipped. It is for the court to construe the writing. It provides that Lawrence Hart, the plaintiff, delivered, to be transported in safe and suitable cars of the Pennsylvania Railroad Company, from Jersey City to St. Louis, Missouri, live stock of the kind · mentioned, upon terms which are admitted and accepted by the plaintiff as just and reasonable. The defendant, the Pennsylvania Railroad Company, as common carriers, assumes a liability on the stock to the extent of the following agreed valuation: 'If horses or mules, not to exceed $200 each; if for a chartered car, $1,200 for the car load.' The contract then proceeds to give the values of certain other live stock, which it is not necessary to read.

"The court has considered, as well as we could in the brief time we have had, as to what the true construction of that contract is, and as to whether it is a valid or a void contract. It is not necessary that I should go into any discussion of the question in the charge I give to you. We have reached a conclusion, as you have already learned, that it is competent for a shipper, by entering into a written contract, to stipulate the value of his property, and to limit the amount of his recovery in case it is lost. This is the plain agreement that the recovery shall not exceed the sum of $200 each for the horses, or $1,200 for a car load. It is admitted here by counsel for the defendants under this charge that

the plaintiff is entitled to recover a verdict for $1,100, and, also, under the charge of the court the plaintiff agrees that is all. It is simply your duty to find a verdict for that amount."

NOTE. See *Muser* v. *Am. Ex. Co.* 1 FED. REP. 382; *Hall* v. *Penn. R. Co.* Id. 226; *Wertheimer* v. *Penn. R. Co.* Id. 233; *Unnevehr* v. *Steam-ship Hindoo*, Id. 627; *Ormsby* v. *U. P. R. Co.* 4 FED. REP. 700; *May* v. *Steam-ship Powhatan*, 5 FED. REP. 375.